ABRAM A. McWILLIE *v.* OWEN VAN VACTER AND WIFE.

1. PROBATE COURT: JURISDICTION OF: ECCLESIASTICAL COURTS.—In the absence of statutory direction, the modes of proceeding in the Ecclesiastical Courts in England, are, from reasons of convenience, adopted in the Court of Probates; but questions of jurisdiction must be determined by reference to the Constitution of the State, and not to the Ecclesiastical Courts of England.

2. SAME: SAME.—The jurisdiction of the Court of Probates over the estates of decedents, was intended by the Constitution to be full and ample, and in the main, exclusive.

3. SAME: COURT OF PROBATES MAY COMPEL RETURN OF INVENTORY.—In all cases, in which letters testamentary, of administration, or collection, are granted, it is made the duty of the executor, administrator, or collector, to return to the Court of Probates, within a limited time, an inventory of the assets of the decedent in his hands; and if he fail to return such inventory, within the time limited, or return an incomplete or imperfect one, the Court of Probates has jurisdiction to compel him to return an inventory, or an additional inventory, embracing all the assets in his hands. See *Killcrease* v. *Killcrease*, 7 How. 311.

4. SAME: INVENTORY ONLY PRIMA FACIE EVIDENCE: EXECUTOR AND ADMINISTRATOR.—An inventory of assets returned by an executor, administrator, &c., is *prima facie*, but not conclusive evidence, of the value of the estate in his hands, in all suits by or against him; and hence, the Court of Probates may, in a proceeding against him for distribution, compel him to account for assets not embraced in his inventory.

5. SAME: PROBATE MAY ADJUDICATE TITLES INCIDENTALLY.—The Court of Probates has no jurisdiction to decide upon the validity of titles, and the construction of contracts, in a direct proceeding; but, in the discharge of the duties imposed by the Constitution and laws, it has power, incidentally to adjudicate titles and construe contracts; and hence, either upon a proceeding to compel an additional inventory, or for distribution of the estate, the Court of Probates may determine upon the title of property in the possession of the executor or administrator, and alleged to be assets of the decedent, if the property be claimed adversely by the executor himself, or another. ✱

6. SAME: SAME: CASE IN JUDGMENT.—The legatee filed his petition in the Court of Probates, against the executor, to compel him to deliver the slaves bequeathed to the petitioner by the will. The executor resisted the granting of the relief, upon the ground that the testatrix had no title to the slaves bequeathed; and, in support of this position, relied upon a deed which he alleged was made by the testatrix, conveying the slaves to the executor's wife for life, and afterwards to him, but reserving the possession of the slaves to the grantor for her life. It appeared that, upon the death of testatrix and grantor, the executor, who resided with her, held possession of the slaves, but he refused ·

to inventory them, for the reason above stated. *Held*, that the Court of Probates had jurisdiction, in this proceeding, to determine the validity of the alleged gift.

7. GIFT: DEED IN CONSIDERATION OF LOVE AND ONE DOLLAR, VOLUNTARY.—A deed, in consideration of natural love and affection, and of one dollar, is voluntary; and the conveyance thereby made is a gift, and not upon valuable consideration.* Per Smith, C. J.

8. SAME: DELIVERY OF POSSESSION ESSENTIAL.—A gift of a personal chattel is the act of transferring the right and possession thereto, whereby the donor renounces, and the donee acquires, all right and title to the subject of the donation; and it is essential to the validity of a gift, whether made by parol or deed, that it be accompanied by a delivery of the possession: if possession be not delivered, it is not a gift, but a contract. See 2 Kent. Com. 439; *Marshall Fulgham*, 4 How. 216; *Thompson* v. *Thompson*, 2 Ib. 745; *Caradine* v. *Collins*, 7 S. & M. 428; *Newell* v. *Newell*, 34 Miss. R. 385. Per Smith, C. J.

9. SAME: SAME.—As delivery is the act by which the donor parts with his title and possession, and the donee acquires ownership in the subject of the donation, it follows that there can be no perfect gift without a delivery of possession; and hence, a deed of gift of chattels, which purports to convey a present interest in them to take effect in possession *in futuro*, when the possession is not altered, but expressly reserved to the grantor, is invalid. Per Smith, C. J.

10. SAME: SAME: STATUTE OF FRAUDS (Hutch. Dig. 638, § 2).—The Statute of Frauds (Hutch. Dig. 638, § 2) does not affect the validity of a gift of chattels as between donor and donee; it was intended to protect purchasers and creditors, without notice of fraudulent sales, and voluntary gifts; and proceeds upon the presumption that a valid gift as between the parties had already been made, declaring such gifts void as to the creditors of, and purchasers from, the donor, unless possession of the chattel shall *remain* with donee, or the gift be evidenced by deed duly registered. Per Smith, C. J.

11. SAME: DELIVERY OF POSSESSION NOT ESSENTIAL IN GIFTS BY DEED.—In parol gifts of chattels, delivery of possession is essential as evidence of the donation; but when the gift is by deed, no such evidence is required, as the deed itself is clear and certain evidence of the title conveyed to the donee, and is an estoppel to the donor from setting up any title or interest inconsistent with his own solemn act; and hence, a valid gift of a chattel may be made by deed, without a delivery of possession. See Chitty on Contracts, 52; Williams on Personal Property, 33; *Irons* v. *Smallpiece*, 2 Barn. & Ald. 552; *Ward* v. *Audland*, 16 M. & W. 871; *Banks* v. *Marberry*, 3 Littell, 276; *Bohn* v. *Headly*, 7 Harr. & J. 257; *Carnes* v. *Marley*, 2 Yerg. 582; *Duncan* v. *Self's Admr.* 1 Murphey (N. C.), 466; *Wall* v. *Wall*, 30 Miss. R. 91. Per Handy, J.

12. SAME: SAME: STATUTE OF FRAUDS (Hutch. Dig. 638, § 2).—The validity of a gift of chattels, by deed, without a delivery of possession, is clearly recognized by the second section of the Statute of Frauds. Hutch. Dig. 638. Per Handy, J.

* But see *Fairley* v. *Fairley*, 34 Miss. R. 18, which is overruled by this case.

McWillie *v.* Van Vacter and wife.

13. SAME: EFFECT OF GIFT BY DEED, IF A CONTRACT AND NOT A GIFT.—Whether a gift of a chattel by deed, without a delivery of possession, be a perfect gift, or only a contract, can make little difference as between grantor and grantee; for if it be a contract, it would bind the donor, and in equity the donee would take the use and possession which the donor had contracted to convey. Per Handy, J.

14. DEEDS: CERTIFICATE OF JUSTICE OF THE PEACE,—WHAT IT MUST SHOW.— The certificate of a justice of.the peace (or other officer authorized to take acknowledgments of deeds) that the grantor in the deed, "signed, sealed, and delivered it in his presence," is not sufficient to entitle it to record, or to prove its execution and delivery. The statute requires the execution of the deed to be acknowledged, by the grantor, before a justice of the peace, &c., or proven by the subscribing witnesses; and his certificate must show that it was either so acknowledged or proven.

APPEAL from the Court of Probates of Madison county. Hon. I. M. Simmons, judge.

This was a petition in the Probate Court, by Van Vacter and wife, against A. A. McWillie, as executor of Ann McWillie, seeking to compel him to distribute to them certain slaves, which were bequeathed by the testatrix to Mrs. Van Vacter. A demurrer was interposed, which, upon appeal to this court, was overruled. (See 31 Miss. R. 563.) When the cause was remanded from this court, the executor filed his answer, in which he resisted the distribution of the legacy, upon two grounds, viz. :—

1. He denied that he was executor, as to this property, and referred to, and made a part of his answer, the inventory returned by him, from which it appears, that the slaves claimed by the petitioners, had never been inventoried by him, as assets of said estate.

2. He denied that the testatrix had any power to make said bequest, because, at the time of her death, she was not the owner of the property; and he alleges, in support of this, that on the 25th of April, 1842, the said testatrix had made a conveyance of the slaves, and thereby divested her title to the same. This deed is made an exhibit to the answer, and the material parts of it are as follow :—

"Know all men, by these presents, that I, Ann McWillie, of the county and State aforesaid, for and in consideration of the natural

love and affection which I bear unto my daughter-in-law, Sarah Jane McWillie (the wife of my son Abram A. McWillie), and for her better maintenance and support and livelihood, and also in consideration of the sum of one dollar to me in hand paid by my said daughter-in-law, the receipt whereof is hereby acknowledged, have given, granted, bargained, and sold, and by these presents, do give, grant, bargain, and sell, to her, the said Sarah Jane, all the right, title, and interest, which I now possess, or which I may hereafter acquire, in the following slaves" (here follows a description of the slaves, including those in controversy); " to have and to hold the said slaves, as her own property, during her natural life."    The deed then limits the slaves, after the death of Sarah Jane McWillie, to a trustee, for the use and benefit of Abram A. McWillie, the executor; and, if he should die without issue, a further limitation over is made.    The deed then provides, that the said slaves shall vest in the grantees, " upon the condition, and with the reservation, that the above-mentioned slaves are to remain in the possession, and under the control, of the said grantor, Ann McWillie, during the term of her natural life."

The deed is signed and sealed by Ann McWillie, and dated the 25th day of April, A.D. 1842; the certificate of the justice of the peace, set out in the opinion of the chief justice, is appended to the deed, and bears the same date. The deed appears, from an indorsement thereon, to have been filed for record, on the 7th day of October, A.D. 1844.

Besides the proof made, in relation to the value of the slaves, and their hires, &c., it was also proven, that Mrs. Ann McWillie, the testatrix, died on the 5th day of October, A.D. 1844; and that she and the executor resided together, on the same place, from 1839, till her death, in 1844; and John H. Bishop, a witness for petitioners, also testified, that in May, 1844, he was hired by Mrs. Ann McWillie, to oversee the plantation for the ensuing year; and that this contract was carried out by him, and the defendant, as executor of Mrs. McWillie; that the negroes in controversy were on the plantation in 1845, when he went there to oversee, and remained there that year, and were afterwards in possession of McWillie for several years, and as long as he knew them.

This was all the testimony, except as to the value of the slaves and their hires.

There is no bill of exceptions; the oral testimony was reduced to writing, under the statute. Several exhibits to the answer are copied in the record, including the deed from Ann McWillie to Mrs. S. J. McWillie, above copied; but there is no statement, as to whether they were read or not, except as to one of them (the will of Adam McWillie), the reading of which appears to have been objected to. The Court of Probates decreed a distribution of the slaves, as prayed for, and the executor appealed.

*T. C. Tupper*, for appellant.

I shall confine myself to two positions, either of which, if sustained, must cause a reversal of the decree of the Probate Court.

1. The Probate Court had no power to go beyond the inventory, and adjudicate upon adverse claims to property, alleged to belong to the estate.

2. If the court has such power, the proof shows that the testatrix alienated the slaves in controversy, by deed, in April, 1842, and, therefore, was not seised in law of the same, at the time of her death.

I. The power of the Probate Court, by the Constitution, extends only over the assets of the estate. *Clement* v. *Hawkins*, 8 S. & M. 339.

We ascertain what are the assets, by referring to the inventory. The inventory, as defined by the books, is "a full and just description of all the personal estate and effects which belong to the deceased." North on Probate, 137 (note). This inventory, returned under oath, is an official act of the executor, who is an officer of the Probate Court, and entitled to all the credit of such an act. It is the inventory which gives the court jurisdiction, as to the effects of the decedent; and its correctness cannot be controverted, in this proceeding, on petition for distribution. But suppose this proceeding were directly against the executor, to compel him to return an additional inventory. Even then, we insist, the correctness of the present inventory could not be controverted in the Probate Court. Our statute, requiring the executor to return an inventory, is similar, in all respects, to that of 21 Henry 8, ch. 5, requiring executors and administrators to deliver an inventory to the ordinary, &c. Under that act, it was held, that "the truth of this inventory cannot be controverted in the ecclesiastical

court." Fonblanque Eq. 588, side page 418; *Hinton* v. *Parker*, 8 Mod. 168; *Catchside* v. *Ovington*, 3 Burr. 1922.

"In the absence of statutory directions, the modes of procedure adopted by the ecclesiastical courts of England, are in force in our own Probate Courts." *Cowden* v. *Dobyns*, 5 S. & M. 82.

The question, whether, in any case, the Probate Court can exercise jurisdiction, as to property not contained in the inventory, has not, I believe, been directly decided by this court, on a case directly and necessarily involving the point. ·

But where an adverse claim is set up to the property thus situated, it is settled, that the Probate Court has no power to settle the question of conflicting title. *Burnett* v. *Strong*, 26 Miss. Rep. (4 Cush.) 116. The administrator, or executor, cannot be required to embrace property in the inventory, not already contained in it, "unless it were clearly shown, that the property belonged to the estate, and that it was omitted, through negligence or fraud of the administrator, without any adverse claim set up to it by other persons, or without circumstances showing that the title of the intestate had been divested." *Snodgrass* v. *Andrews*, 30 Miss. Rep. (1 Geo.) 487.

II. But if the whole question of title could have been settled by the Probate Court, the evidence shows that the title of the testatrix to the slaves had been divested in April, 1842. The deed conveying the property, was made and delivered, and duly acknowledged, on the 25th day of April, 1842. By its terms, it reserves the possession in the grantor, or donor, during her natural life. On her death, the grantee took possession according to the terms of the deed. The deed stands unimpeached and uncontroverted. Upon what principle the court ignored its existence, I am at a loss to determine. In the case of *Wall* v. *Wall*, 30 Miss. R. 91, this court has held, in accordance with numerous decisions in other States, that "a deed conveying chattels to a donee, reserving the possession and use of the property during the life of the donor, is valid, though the deed be not made to trustees for the parties in interest."

It is clear also, that under this deed, a present interest vests in the grantee, to take effect in possession, *in futuro*, and therefore. is not in the nature of a will. See above case, *Wall* v. *Wall*, p. 100.

A question may arise as to the delivery of the deed. On this

point there is no proof in the record, except the official certificate of the justice of the peace, of the acknowledgment of the grantor that she signed, sealed, and delivered the deed, &c., on the day of its date, 25th April, 1842. This we deem sufficient evidence of delivery. At all events, it is sufficient evidence of the intention of the grantor or donor, that the deed "should be considered as executed and delivered."

Besides, the deed having been executed with all due formalities on the day of its date, and being afterwards found in possession of the grantee, or donee, claiming under it, the legal presumption is that it was delivered at the time of its execution, in the absence of all proof to the contrary. The delivery is an act *in pais*, and the onus of proving the possession of the instrument rests upon the party seeking to invalidate the conveyance.

But however this may be, this point also has been fully met and decided in the above case of *Wall* v. *Wall.* In that case the deed was retained by the donor, and found among his papers at his death, although he had delivered it to one of the donees, who returned it to the donor. It was acknowledged as a deed duly executed and delivered. So was the deed in the case at bar.

In that case the court say: "This being a voluntary settlement, and the rights of creditors and subsequent purchasers not being involved, the mere fact of the maker's retaining the instrument in his own keeping, intending that it should be considered as executed and delivered, will not render it invalid for want of delivery."

*A fortiori,* in the absence of all proof of the want of delivery, the deed will not be rendered invalid upon a mere presumption of no delivery.

The facts of this case raise a presumption, at least, of an actual delivery of the deed.

1. The certificate of the justice that the deed was delivered. (This was read without objection, otherwise his testimony would have been procured.)

2. The fact that the grantee resided with the grantor, from the date of the deed up to the time of her death.

3. The interest of the grantee in the property conveyed, raises a presumption of delivery of deed.

4. It is nowhere alleged or proved, in any manner, that the deed

remained in possession of the grantor; nor is there a single fact leading to such a presumption.

*F. Smith*, on same side.

1. No objection was raised in the court below, as to insufficiency of the proof of the delivery of the deed. It cannot be raised now. *Coulter* v. *Robertson*, 14 S. & M. 22; 3 How. 214; 8 S. & M. 197; 9 Ib. 27; Ib. 621; 7 How. 130; 1 Cushm. 101; 11 S. & M. 189; 4 Cushm. 303; Ib. 81.

2. The gift being by deed, was valid without an actual delivery of the property. *Wall* v. *Wall*, 30 Miss. R. 91.

3. The question of the adverse title of Mrs. S. J. McWillie, was without the jurisdiction of the Probate Court. *Holloman* v. *Holloman*, 5 S. & M. 561; *Bisland* v. *Hewett*, 11 Ib. 169; *Hart* v. *Dunbar*, 4 Ib. 387; *Green* v. *Creighton*, 10 Ib. 163. The Probate Court should have made an issue, and sent it to the Circuit Court. *Compton* v. *Compton*, 6 S. & M. 198.

4. Deeds of gift may reserve a life estate to the grantor; and they are valid against all the world without being recorded, except as to creditors. *Norman* v. *Burnett*, 3 Cushm. 185; *Verplank* v. *Sterry*, 12 Johns. R. 548; *Ball* v. *Newton*, 1 Verm. 467; 2 Ib. 467; *McAfee* v. *Keirn*, 7 S. & M. 788; *Watson* v. *Routledge*, Cowper, 705; *Dorsey* v. *Smithson*, 6 Har. & J. 61; *Ellis* v. *McBride*, 5 Cushm. 155; *Ratcliffe* v. *Dougherty*, 2 Ib. 182; *Caradine* v. *Collins*, 7 S. & M. 433; *Coale* v. *Harrington*, 7 Har. & J. 156; 2 Kent's Com. 554; *Souverbye* v. *Arden*, 1 J. C. R. 255; *Bunn* v. *Winthrop*, Ib. 335; *Bohun* v. *Headley*, 7 H. & J. 271; *Caines* v. *Marley*, 2 Yerg. 582; 1 Murph. (N. C.) 466; *Banks* v. *Marberry*, 3 Littel, 275; *Horn* v. *Gartman*, 1 Branch, 63; 2 Tenn. R. 595; *McCutchen* v. *McCutchen*, 9 Porter, 650; *Abbot* v. *Williams*, 2 Brevard, 38.

5. The sealing of the deed imports a consideration, and hence it is not a voluntary gift. *Bunn* v. *Winthrop*, 1 J. C. R. 334; *Cox* v. *Vogh*, 4 George, 188. And such consideration so imported by the deed, stands until attacked by special plea. *State* v. *Bartlette*, 1 George, 627.

6. Constructive or symbolical delivery of a chattel is all that is required,—such as a delivery of a deed, or declaration of a gift,

and there is no actual delivery because the donor and donee live together. 2 Kent's Com. (8 ed.) 554, 555, and notes; 7 S. & M. 428; *Young* v. *Young*, 3 Cushm. 44; *Pope* v. *Randolph*, 13 Ala. R. 214; *Blakey* v. *Blakey*, 9 Ala. 391; *Anderson* v. *Baker*, 1 Kelly's (Ga.) R. 595; 7 Har. & J. 156.

7. The certificate of the justice of the peace was sufficient proof of delivery of the deed. *Russ* v. *Wingate*, 1 George, 445; *Dennistoun* v. *Potts*, 4 Cushm. 13.

*Davis* and *Hill*, for appellees.

The ground taken by the appellees is, that the deed of gift is void, because delivery did not accompany the gift, and that the deed contains in itself the elements of its own destruction, by providing that the donor shall continue in the possession of the property.

In every period of the common law, delivery has been held essential to the completion of a gift; it has, in fact, long since ripened into a well-known legal maxim, " that a gift is only perfected by the possession of the donee, *Donatio perficitur possessione accipientis.*" It is imperfect, inchoate, in fact void, unless possession accompany the gift. If possession do not accompany the gift, it becomes then a mere contract, and cannot be enforced either against the donor or his representatives. On this point, it is scarcely necessary to cite authorities, but if any be necessary, the following will be sufficient: 2 Kent Com. 438; 2 Johns. R. 52; *Pearson* v. *Pearson*, 7 Ib. 26; *Grangiac* v. *Arden*, 10 Ib. 293; 2 Gill & John. 208; 2 Black's Com. 442; 1 Nott & McCord, 220–225.

But it may be said that this is true only of parol gifts, and does not apply to deeds. But, in principle, can there be any such distinction? The deed is only intended as a perpetual memorial of the donor's intention; and suppose, in this case, the donor had assembled one hundred persons, and made the public declaration in their presence, that she gave the negroes in question to Jane S. McWillie, after her own death; but that she did not deliver the negroes, but expressly stated, that she reserved the possession of them during her own life; undoubtedly no one would contend that such public declarations, however clearly evidenced, would affect the rights of the donor, or her personal representatives after her

death ; in fact, it would be void, the whole gift would be imperfect, incomplete, and null and void, for want of delivery. A deed is a sealed instrument (delivered), and proves and testifies the agreement of the parties in relation to things contained in the deed. Coke upon Litt. 35; Shep. Touchstone, 50. The office of the deed is to prove and testify the agreement of the parties, and when the deed testifies to the circumstance that the donor retains possession of the property pretended to be given, is not the gift as effectually destroyed, as if the same things were proven and testified by witnesses ?

And if the sealed writing, under which the donee claims, shows the fact that the donor retains possession, it must avoid the gift. In conformity to these principles, this court decided the case of *Thompson* v. *Thompson,* as early as 1838. See 2 How. 737, and *Marshall* v. *Fulgham,* 4 How. 216. And such has been regarded the law ever since, and counsel and clients have advised and acted in conformity thereto.

But it may be said, that this court has decided differently, in the late case of *Wall et al.* v. *Wall,* 30 Miss. R. 91–100 ; but it will be found, that the only point before the court, in that case, really necessary for adjudication, was, whether the paper was, in fact, a deed or a testamentary paper ; and the court held that the paper was, in fact, a deed, and hence improperly admitted to probate as a will. It was not necessary for the court to pass upon the effect of the deed as a legal instrument ; that question could not be litigated between the donees and the executor, in the Probate Court ; that controversy could only arise in another forum, upon a direct proceeding between the donees and the executor ; and hence, it is clear that all that is said on that point, is a mere *dictum,*—at most, but the hasty opinion of the single judge who delivered it. The whole court agree in the main conclusion, viz., that the paper was a deed ; but the opinion is binding on this court, only on that point. The Probate Court had jurisdiction to determine whether the paper was testamentary, but it had none as to the validity of the deed, and its legal effect ; and the appellate court, having only such jurisdiction as the court had from which the appeal was taken, it would seem that this court, in the case of *Wall* v. *Wall,* had jurisdiction only to pronounce on the point, whether the paper was

testamentary or not.   At all events, whether this view be correct or not, it is submitted, that that was the only point before this court, and the only one, as to which the decision can be regarded as a binding authority.

But, conceding that *Wall* v. *Wall* is good authority, on the point of the validity of the deed, still it will be seen, that there is a great distinction between that case and this, on the proof of delivery.   In that case, the deed was acknowledged, and in addition thereto, contained the further provision, that the placing it among his papers should be the evidence of its delivery; that is, of the delivery both of the deed and the property.   And Justice Handy lays much stress on that point, and goes on to show, that the deed was found placed among his papers, in conformity with the mode of delivery adopted by the donor; and he also mentions the additional circumstance, that the donor had written to his brother, telling him shortly before his death, where the deed would be found.   Now, no such circumstance exists in the case at bar; that is, no proof of the delivery of the instrument.   It is put on record after the death of the donor; and, as the executor had charge of the papers, and as his wife was entitled to a life estate, and himself to a beneficial interest in the deed, the legal presumption is, that he took the deed from among her papers after her death.

But it may be said, that the certificate of the justice of the peace is sufficient evidence of delivery.   We do not so understand it. Under our law, this acknowledgment is an essential part of the execution of the instrument; it is a preliminary, indispensable to admitting the paper to record, and not intended to dispense with proof of delivery of the instrument.   Suppose A executed a deed to B, which he hands to C, intending the same as an escrow, and that A should have formally acknowledged the instrument, could it be said that this acknowledgment was proof of delivery, and that B's rights were vested, notwithstanding the fact, that it was only handed to C as an escrow, to take effect when some precedent act had been performed by B?   In the case of *Frisbie et ux.* v. *Mc-Carty*, 1 Stewart & Porter, 56–70 (Ala. Rep.), the father of Mrs. Frisbie executed a deed of gift, and attested by witnesses, and, in answer to a proposition made by his wife, for the witness to take the deed, and have it recorded, said he would go to the court-house, and have it recorded himself.

Now, an attestation before witnesses, is just as good as a formal acknowledgment before an officer, authorized to take acknowledgments. Witnesses are, in fact, intended to answer the same purpose; and the deed can be proved and recorded in either mode,—by proof of the attesting witnesses, or by the acknowledgment of the grantor. Yet, in that case, the court say, that the proof of delivery was insufficient; and, in page 61, they hold that delivery must be made to the grantee, or to some one for his use, or into the proper office, to be recorded. Now, there is no such proof in this case. The simple acknowledgment, which occupies no higher position than attestation before witnesses, which was held insufficient, in *Frisbie and wife* v. *McCarty*, is the only proof of delivery. From whom should the proof come? Not from the appellees; for they are strangers to the deed. But the proof of delivery should have been made by the appellant, whose wife took a life estate, and himself an interest in the deed; and he, being charged in this proceeding with liability for the legacy, unless the deed constitutes a defence, every fact, necessary to the validity of the deed, must be adduced by him. And it is insisted, that he has failed to prove delivery. The acknowledgment is not sufficient proof; and surely, its being placed on record after the death of the donor,—appellant, her executor, living in the same house, and having charge of her papers,—so far from warranting presumption of delivery, rather contradicts such presumption. In fact, the hot haste with which it is placed on record (two days after her death), forces the mind, irresistibly, to the conclusion, that the donees had just got possession of it, and repels the idea that a deed, made more than two years before, had all that time been in their possession.

The court will perceive, that delivery was made a point in the evidence, in the case at bar, from the proof of Henry; and it is, of course, presumable, that the appellant furnished all the evidence in his possession, on that point. At all events, as he made his bed, so let him lie; and, having failed to produce any evidence of delivery, other than the certificate of acknowledgment, it is believed that the proof on that point is defective.

In the case from 7 Harris & Johnson, 257, cited by Justice Handy, the deed was recorded; and hence, there could be no question of delivery. Besides, the question, in that case, seems to

have turned on the *bona fides* of the gift—whether it was fraudulent or not; and no point is made by the court on the circumstance, that the donor reserved possession; and we incline to the opinion, that such reservations of possession are good in Maryland, by virtue of their Statute of 1763, which provides that deeds of gift, containing such reservations, shall be recorded.

In the case of *Clavering* v. *Clavering*, 2 Vernon, it is inferable, that there had once been a formal delivery of the deed; and that where there had been a delivery, the deed was irrevocable, although it were found in the possession of the grantor.

Finally, it is insisted that the point of delivery was a question of fact, to be tried by the Probate Court, and that court having determined, by its decree, against the delivery, this court will apply the same principles to the decree of that court, as to the verdict of a jury, and will not reverse, unless the decree on that point is manifestly wrong. In determining that branch of the case, the inquiry is similar to that in cases of a verdict; and is not, whether the finding is right, but is it manifestly wrong; and, unless manifestly wrong, it will not be disturbed. It is not, whether this court would have so found the fact, but whether the finding of the court below, was against the decided preponderance of the testimony, on the point of delivery. On the one side, it appears that the deed was acknowledged before a justice; on the other, it appears that it was not recorded until after the donor's death, and that appellant was her executor, living in the same house, and, on her death, of course, had access to her papers; that he had the strongest motives, if the deed were found among her papers, to appropriate it, and have it recorded. It is shown to be improbable that the deed was delivered to the donees, from the fact, that, if delivered on the day of its execution, it is exceedingly improbable that it would have been retained by them nearly two years, and recorded in a day or two after her death. Grantees, especially donees of valuable personal property, would scarcely be so improvident as to trust such important interests, as were conveyed in this deed, to such accidents as might arise from fires, loss, or other casualties, when it would be so easy a matter to place the muniment of their title beyond the reach of contingencies, by having it recorded.

Again, by recording it, it is placed beyond the power of the do-

nor to incumber it by future debts.   These are considerations ad-
dressing themselves to the judicial mind on the point of delivery,
and it is presumable had their due weight on the judge, who pro-
nounced against the deed for want of delivery.

These views are presented to the court on the presumption, that
the case is properly before this court; but it is submitted, that
there is no bill of exceptions in the record, and such bill is the only
medium of communication between the Probate Court and this
court.

Again, there is no proof of the acknowledgment of the deed —
the record does not show that the deed was read without objection
— the deed does not seem to have been offered at all, only as a
part of the answer, that is, it was read as an exhibit; hence we are
not chargeable with raising a point not raised in the court below:
it devolves on the appellants to show the facts necessary to reverse
their case, and to show that the deed was read without objection—
that the record does not show that the deed was read without ob-
jection, the record showing no such thing; and hence, as the party
appellant has made his bed, so must he lie.

A gift cannot be made without delivery, nor, in fact, can any
sale of personal property.   Some cases have held, that a delivery
may be symbolical, as a part for the whole; but in every instance,
such a delivery must take place as the nature of the thing will ad-
mit of, and the delivery must be such as would, at the time of the
delivery, give the donee power to take immediate control, if he de-
sired to do so.   " The delivery must always be according to the
subject-matter of the thing, and the property must be placed under
the control and power of vendee," even in cases of sale.   See, on
this point of symbolical delivery, 2 Kent's Comm. 648, 7th edit.

Again, the Statute of Frauds has no applicability to this question.
That merely provides, that in the case of gifts, when consummated,
they shall be deemed fraudulent as to creditors and purchasers
without notice, unless possession remain with the donee, or unless
the conveyance be by deed duly acknowledged and recorded.

This statute was only intended to protect creditors and pur-
chasers without notice, against fraudulent sales and voluntary gifts.
To do so, the law required possession to remain with the donee, or
a deed recorded to be made, as evidence to the world that the gift

was made. But the statute in no particular changes the rule of the common law, requiring a delivery, before there is a valid gift *inter partes*. But when a valid gift between them is once made, it provides that the gift thus made shall not stand against creditors and purchasers, unless the additional facts also appear, to wit, that possession remained with the donee, or the gift be evidenced by deed duly recorded. The statute presupposes a gift, complete between the parties, but in no way modifies the essentials required by the common law to make a gift.

SMITH, C. J., delivered the following opinion.

This was a proceeding, by petition, in the Court of Probates of Madison county, to compel the executor to deliver to the petitioners certain slaves, which they claimed as a specific legacy under the will of Mrs. Ann McWillie, deceased.

The petitioners alleged, that the testatrix, having made and published her last will and testament, in which she bequeathed to Ann J. Mikey, the wife of Owen Van Vacter, certain slaves, died in 1844; that the will was duly admitted to probate in said court, and that Abram A. McWillie was appointed sole executor by the will; that McWillie, qualified as the executor, took possession of said slaves, and continues to hold them; that all the debts of the testatrix have been paid, and that more than twelve months have elapsed since the date of his letters testamentary. The petitioners pray for a delivery of the slaves, with hire, or the payment of their value, and the amount of their hire.

A demurrer was filed to the petition, which was sustained, and the petition dismissed. On appeal, the decree was reversed, and the demurrer overruled in this court. And the cause being remanded, the defendant filed his answer, in which he admitted that he was the executor, as charged; denied that, as such executor, he held possession of the slaves claimed by the petitioners, and refers to the inventory of the testatrix's estate, returned by himself, as containing a true statement of the effects belonging to it. He alleged, that when she died, the testatrix was not seised of the slaves, and in support of this allegation, refers to, and makes it a part of his answer, a certain instrument alleged to have been executed by the testatrix on the 25th of April, 1842. As a further

defence, he alleged that the bequest set up in the petition was invalid, for want of title in the testatrix; and referred to the will of Adam McWillie, deceased, a certified copy of which was made part of the answer. The defendant denied, further, that the debts were all paid.

The cause was heard upon the petition, answer, and proofs; and a decree was rendered, by which the defendant was ordered to deliver up the slaves, and to pay a certain sum as compensation for their hire, or in default of such delivery and payment, to pay petitioners the value of the slaves and their hire, as determined by the decree. Whereupon an appeal was taken to this court; and a reversal of the decree is sought, upon grounds which we will proceed to consider.

It is first insisted that, in this proceeding, the inventory returned by the executor was conclusive as to the description and value of the assets, for which he was accountable: and hence, as the slaves claimed as a specific legacy, were not returned by the executor as part of the testatrix's estate, the court had no authority to go beyond the inventory, and order distribution of property not embraced in it.

We may admit the correctness of this doctrine, as applied to a similar proceeding in the ecclesiastical courts of England, whose powers and jurisdictions are restricted to much narrower limits, than the authority and jurisdiction of the Courts of Probates in this State.

In the absence of statutory directions, it is found convenient to adopt the modes of proceeding observed by those courts. But in questions concerning the jurisdiction of the Courts of Probates, we do not refer to the ecclesiastical courts of England, as an authoritative standard. The Constitution of the State is the common source of the authority and powers of all our courts; and hence, in all questions in regard to the extent of their respective jurisdictions, must determine the controversy. The jurisdiction of the Courts of Probates, over the estates of decedents, was intended by the Constitution to be full and ample; and has, by this court, been uniformly held to be, in the main, exclusive.

In all cases in which letters testamentary, of administration, or of collection, are granted, it is made the duty of the executor,

administrator, or collector, within a limited time, to return an inventory of the assets of the estate in his hands. Hutch. Code, 661. The object of this provision of the statute, was to secure regularity and method in the management of decedents' estates, to insure greater fidelity on the part of those intrusted with their administration, and to guard the rights of all parties interested, by furnishing means of accurate information, as to the value of any estate in the course of administration. The inventory, with the appraisement, when made out and returned agreeably to the directions of the statute, is made *prima facie* evidence of the value of the estate, in all suits by or against an executor, or administrator. But in no case, nor in any court, is the inventory declared to be conclusive evidence. Hutch. Code, 661, § 77. And as early as 1843, upon an application, by petition, in the Court of Probates, to compel the respondent, as executrix, to file an additional inventory of the estate of her testator, it was held, that the Court of Probates had jurisdiction over the subject, and power to compel a full inventory to be filed. *Killcrease et al.* v. *Killcrease,* 7 How. Miss. R. 311. This was a direct decision upon the question under consideration, and its propriety has never been questioned in any subsequent adjudication.

It is true, in the case above cited, that the application was to compel the executrix to file a full and correct inventory, and not for distribution of assets not inventoried, as in the case at bar. But we apprehend this difference, under the circumstances of the present case, can have no important bearing upon the power of the court, to order a delivery of the slaves in controversy, to the petitioners, if in all other respects their claim be deemed valid. Here it is alleged that the executor, in his character as such, took possession of the property, claimed as a specific legacy, and that he is still in the possession of it. The court had jurisdiction of the person of the executor, and, of consequence, its authority extended to all property in his possession, which rightfully constituted part of the testatrix's estate. Assuming, for the present, that the property in controversy was assets of the decedent's estate, to which the petitioners were entitled under the will, as a specific legacy, and that the executor took possession, and still holds possession, it would be mere trifling to hold, that before he could be called upon

for a delivery of the property, he should be compelled to return a full inventory in which it would be embraced.

In the second place, it is insisted that the decree should be reversed, for the reason, that the court had no power to adjudicate upon the title to the slaves in controversy, to which an adverse claim was set up.

It is conceded, that the Courts of Probates have no jurisdiction to decide upon the validity of titles, or the validity and construction of contracts, in a direct proceeding; but, that those courts, in the discharge of the duties imposed upon them, by the Constitution and the laws made pursuant thereto, have the power, incidentally to try title, and to adjudicate upon the validity and construction of contracts, has never been questioned by any decision of this court. We have seen that the inventory is but *prima facie* evidence of the description and value of the estate, and that it may, by other evidence, in any suit by or against an executor or administrator, be shown to be false. All the cases recognize the power of those courts, to compel the executor or administrator to make a correct and full inventory of the assets of the estate in his hands. *Killcrease* v. *Killcrease*, 7 How. 311; *Burnett* v. *Strong*, 26 Miss. R. 116; *Anderson* v. *Duke*, 28 Ib. 87; *Snodgrass* v. *Andrews*, 30 Ib. 487. It is manifest that these cases, in effect, recognize the authority to adjudicate upon the title of property in the possession of the executor or administrator, which is alleged to be assets of the estate of the testator or intestate. For otherwise, the jurisdiction of the Courts of Probates, in this respect, would be utterly nugatory. The case of *Hill* v. *Hardy & Williams*, 34 Miss. R. 289, is a direct decision upon the question. In that case, it was held, that in matters connected with orphans' business, and the administration of decedent's estates, where the question is incidentally presented, the Court of Probates has jurisdiction to try title, and to determine upon the validity and construction of contracts.

In the case at bar, the property claimed as a specific bequest, was in the possession of the testatrix at the time of her death, and went into the hands of her executor, who still held possession when the petition was filed. Under these circumstances, there can be no dispute, that, in a proceeding to compel him to return an inventory of it, the court would have jurisdiction to decide upon the

testatrix's title. This being established, it follows necessarily, that the court would have the same power in an application for distribution.

In the third and last place, it is contended, that conceding the authority of the court to go into the investigation of title, the decree was erroneous, upon the facts established by the evidence in the cause.

The adverse title set up, and upon which the assumption is based, that the property in question was not assets of the estate, and therefore not subject to distribution, arises under the deed of gift referred to in the defendant's answer. That deed purports to be founded upon the love and affection, which the donor or grantor bore to the donee, Mrs. Sarah J. McWillie, her daughter-in-law, and the further consideration of one dollar. It conveyed certain slaves, including those in controversy, to Mrs. Sarah J. McWillie, for life, with remainder to a trustee, for the use of the appellant, Abram A. McWillie, and reserving to the grantor during her life the possession and control of the property. It bears date on the 25th of April, 1842, and was, on the same day, acknowledged before a justice of the peace, whose certificate is in the following words: "Personally appeared before me, Daniel Moore, an acting Justice of the Peace in and for said county, Mrs. Ann McWillie, widow, trading and acting for herself, who, in my presence, signed, sealed, and delivered the foregoing instrument of writing as her own act and deed, and for the purposes therein specified." The grantor died on the 5th of October, 1844, and the deed was filed for record two days after that event. The record contains no further proof of the delivery of the deed. Abram A. McWillie lived on the same place with the grantor, when the deed was executed, and when she died. There was no evidence, nor an attempt at proof, that the slaves specified in the deed, were ever delivered to any person interested under it. On the contrary, in accordance with the reservation in the deed, the evidence tends strongly to show that, in point of fact, there never was a delivery of the property embraced therein.

The questions arising upon these facts respect the validity, due execution, and delivery, of the instrument under which the adverse claim of Mrs. Sarah J. McWillie and the appellant is set up. We

will first direct our attention to the character of the instrument itself, as our conclusions upon that subject may dispense with any further investigation.

We entertain no doubt that the instrument in question is to be regarded as a voluntary deed, and not a conveyance of property, based upon a consideration deemed valuable in law. It is what the law recognizes as a deed of gift. The proposition to be solved, therefore, is whether a gift or a donation of chattels personal, without delivery of possession to the donee, by deed of gift which reserves possession to the donor for life, is valid, under the law of this State?

A gift of a chattel personal is the act of transferring the right and possession thereto; whereby one man renounces, and another man acquires, immediately, all right and title thereto. No consideration is necessary to support it; and if made *bona fide*, and there is an immediate delivery of possession, it is good against the world. But if the gift does not take effect by immediate delivery of possession, it is then not a gift, but a contract. The subject of the gift must be certain, and there must be the mutual consent and concurrent will of both parties. Delivery of possession to the donee, was essential to the validity of a gift of a chattel personal. This was, unquestionably, the rule at common law, in regard to gifts by parol. But a distinction has been taken, in some of the English cases, between gifts by parol and by deed; and it has been hinted or assumed, that a gift of a chattel might do, without delivery, if made by deed, or in writing. *Flower's Case*, Noye's Rep. 67 (cited by Kent); *Irons* v. *Smallpiece*, 2 Barn. & Alder. 551. This rule, as a principle of the common law, at best, rests upon slender authority, and by Chancellor Kent is denied to exist. 2 Kent's Comm. 439. However this may be, no doubt can be entertained as to the doctrine of this court on the subject for the last twenty years; as no distinction has ever been recognized between the gift of a chattel personal, by parol or by deed. In all cases, in which the question has come directly before the court, and where its determination was necessary to a disposition of the case, it is held, that delivery of possession is essential to the validity of a gift, whether attempted to be made by parol, or by an instrument in writing. *Marshall* v. *Fulgham*, 4 How. 216; 2 Ib. 745 (*Thompson* v. *Thompson*); *Cara-*

*dine* v. *Collins*, 7 S. & M. 428; *Newell* v. *Newell*, 34 Miss. R. 385; *Haley* v. *Brown* (not reported).

In the two first cases, the question arose upon deeds which purported to convey the property donated, absolutely, without any condition or reservation of possession to the donors. In the third case, the words, " under my own proper guardianship and protection," were inserted after the *habendum* in the deed of gift, which, it is manifest, was equivalent to a reservation of the possession, until the donor should see proper to perfect the gift, by a delivery of the property specified in the deed. The charges given in the court below, raised, directly, the question whether the deed was operative, or not, unless there had been a delivery; and it was distinctly held, and stated to be the settled doctrine of this court, that a delivery, either actual or constructive, was essential to the validity of a gift; and of course, whether the gift was by parol, or an instrument of writing; as the question then under consideration arose upon a deed duly executed and recorded. The court say, in that case, " As between the donor and donee, the gift of a chattel is incomplete, without delivery, or some act equivalent to a delivery, if at the time the thing be susceptible of transmission. We do not say, that actual delivery is necessary; it may be constructive, or symbolical. Perhaps the delivery of a deed, or having it recorded, might be regarded as circumstances sufficient to amount to a delivery, or to justify the presumption that a delivery had been made. We only decide, that delivery, actual or constructive, is necessary."

The fourth case, *Haley* v. *Brown*, presented the precise question under consideration. In that case, there was no written opinion; but it was decided expressly upon the authority of the case previously cited. The case of *Newell* v. *Newell* recognizes the doctrine held in all the preceding cases; that is, that " a gift is never complete without a delivery of the property."

It has been supposed, that the Statute of Frauds (H. Code, 637, sec. 2), has an important bearing upon the subject. The expressed and manifest object of that statute, was to protect creditors and purchasers without notice, against fraudulent sales and voluntary gifts. For this purpose, the statute requires that possession shall remain with the donee, or a deed duly executed and recorded, as

notice to the world that the gift was made. It is clear, that the statute does not attempt to change the rule at common law, which makes delivery to the donee essential to the validity of a gift of a chattel personal. It proceeds upon the presumption, that a valid gift has been made; and provides that the gift, however valid, shall not stand against creditors and purchasers, unless possession shall *remain* with the donee, or the gift be evidenced by deed duly executed and recorded. It is, hence, manifest that the statute has no application to the subject.

As delivery is the act by which the donor parts with his title and possession to the subject of a donation, and the donee acquires the right and possession thereto, it seems too plain for controversy, that if a deed of gift which purports to transfer the possession and title to a chattel, to take effect *in presenti*, be inoperative, unless delivery be made to the donee; a deed of gift of chattels, which purports to convey a present interest, to take effect, in possession, upon some future event, where possession is not delivered, but is expressly reserved to the donor, must also be invalid.

As this is incontrovertibly true, in order to avoid a very palpable inconsistency, we would be driven to hold that the gift, in either case, is void without delivery of possession, or that a delivery is not necessary to the validity of a gift of a chattel personal. But if we adopt the latter alternative, we disregard a plain principle of the common law, and discard a doctrine of this court, which has been acted upon, by citizens, clients, and counsel, for near a quarter of a century, as the settled law of the land.

Our decision in the recent case of *Wall* v. *Wall*, 30 Miss. R. 91, has been cited as holding an adverse doctrine on the subject.

In that case, the main question was, whether a certain instrument, admitted to probate, as the last will and testament of the deceased, was "in law a deed, or a will." The question, whether the instrument was a will, or not, was clearly not dependent upon the further question of the validity of the instrument, if held to be a deed, and not a will. The legitimate investigation of this court necessarily terminated with the conclusion, that the instrument was a deed, and not a will. It could not properly decide upon its validity, as an instrument of that character, as no such question could have been raised or decided in the Court of Probates. Under

these circumstances it is clear, that whatever expressions may have been used, it was not our intention to overrule the previous decisions on the subject of gifts.

The common law of England, modified by the peculiar genius of our institutions, and altered by special legislative enactments, constitutes the great body of our municipal jurisprudence. This court, in its adjudications upon the subject under consideration, has adopted as a rule of decision, an acknowledged principle of the common law, which, it is manifest, is not repugnant to the genius of our government, and which it is believed has never been altered by the legislature. Clearness and correctness in the exposition of the law, and the just application of its true principles in the settlement of controversies, is a high duty imposed upon courts. But at the same time, wisdom and sound policy require certainty and stability in their decisions. If, therefore, we were doubtful of the expediency of the law, and even questioned the correctness of the doctrine of this court upon the subject, we should, nevertheless, at this day feel bound to adhere to it.

This view of the subject renders further examination unnecessary.

Decree affirmed.


HANDY, J., delivered the following opinion:—

While I concur in the opinion of the chief justice, upon the first and second points stated in that opinion, and in the conclusion, that the judgment should be affirmed, I cannot agree with the views stated upon the third point considered in the opinion, and will briefly state my view of the subject.

The question is, is a deed of gift, signed, sealed, and delivered by the donor to the donee, conveying personal chattels to the donee, but reserving possession to the donor for a specified time, valid, as between the donor and donee, to transfer to the latter the title to the property?

It is true, that the negative of this proposition is held by the cases of *Thompson* v. *Thompson*, 2 How. 737, and *Marshall* v. *Fulgham*, 4 Ib. 216. In the former of these cases, it is to be observed, the instrument under which the title was claimed, was not in law a deed, and could not import any of the legal efficacy of a

deed. The question, therefore, did not properly arise in that case, and it cannot be considered as authority upon the point.

In *Marshall* v. *Fulgham*, there was no reservation of possession to the donor, in the deed; but it is broadly held, that if a deed does not take effect by immediate delivery of possession of the chattel, it is not a gift, but a contract.

The authority on which this rule is stated, is 2 Bl. Comm. 442. But it appears to be evident, from the context, that Blackstone referred to *gifts by parol*, in the passage cited, and when he says that *a true and proper* gift is always accompanied by delivery of the chattel; for he states, as a reason for it, that then " it is not in the donor's power to retract it." He further states, that without delivery, it is not a gift, but a contract. Yet he shows in the same chapter, that *if it be by deed*, though voluntary, it imports a consideration, and the donor is bound by it. So that the general remark, in relation to the necessity for delivery of possession, must have been made with reference to what he denominates " *a true* and *proper* gift"—a naked, simple gift—by parol; for he lays it down, as the general rule, that gifts of chattels may be made, " either in writing, or by word of mouth, attested by sufficient evidence, *of which delivery of possession is the strongest and most essential.*" It is, therefore, only in point of evidence of the fact that the gift has been made, that delivery of possession is essential. But it does not follow, that that fact may not be shown by other evidence than delivery of possession.

He says but little, as to gifts by writing or deed, because such instruments are such clear evidence of the title conveyed by them, that they would speak for themselves, and required nothing to be said, as to their nature and effect, which were governed by the general rules applicable to deeds. But it was different with respect to parol gifts. Being doubtful and uncertain as to their true character, and as to the evidence upon which they rested, it was necessary that some decisive act, showing clearly that the donor intended that the chattel should be the property of the donee, should appear; and that act, in such a case, was the delivery of possession. But, in the case of a conveyance by deed, the nature of the title is rendered certain to the donee, and the donor is thereby estopped from setting up title, contrary to the terms of his solemn deed.

Hence the reasons stated by Blackstone, as rendering delivery necessary, in the case of a parol gift, could not be applicable to a gift by deed.

If, however, a gift by deed be regarded *as a contract*, as stated, it can make but little difference, as between the donor and donee, by what name the act is designated; for if it be a contract, it would bind the donor, and, in equity, the donee would take the use and possession of the chattel which the donor had contracted to convey, agreeably to the terms of the contract; and, as to creditors and subsequent purchasers, the deed, if recorded, and made *bona fide*, is rendered valid, by the positive provisions of the Statute of Frauds.

But the rule, as stated in *Marshall* v. *Fulgham*, is not sustained by the subsequent cases in this court. In *Carradine* v. *Collins*, 7 S. & M., it is said: "As between donor and donee, the gift of a chattel is incomplete, without delivery, or *some act equivalent to delivery.*" "The delivery may be *constructive*, or symbolical. Perhaps the delivery of a deed, or having it recorded, might be regarded as circumstances sufficient to amount to delivery, or to justify the presumption that delivery had been made. We do not decide what is a sufficient delivery, or what is sufficient evidence that it was made. We only decide that delivery, actual or constructive, is necessary." And this doctrine is sustained, by reference to the cases in 12 John. 188, and 10 Ib. 293.

It is worthy of remark, that the case cited in 12 John. Rep., was a title set up *under a parol gift* of a slave; and, with reference to such a gift, that court says, that "a delivery of possession was necessary to a change of property;" and the case in 10 John. Rep., was *a parol gift* of a *chose in action;* and the court says, that, in such a case, "delivery of possession is necessary to constitute a valid gift." But nothing is said, nor, indeed, could properly have been said, in either of these cases, as to the validity of a gift by deed, without delivery of possession of the chattel to the donee.

It would appear, from this case of *Carradine* v. *Collins*, that it was not considered to be necessary that there should be an actual delivery of the chattel, in order to render the gift valid, when it was made by deed, duly signed, sealed, and delivered; and this doctrine is amply sustained by authority and by sound reason.

It is said that the case of *Wall* v. *Wall*, 30 Miss. 91, is not an authority upon the point, because the question was not there presented, and was not necessary for the decision of that case. This is a misapprehension. The question was, whether the instrument, in that case, was a will or a deed. That was the question argued by counsel, and decided by the court. In order to determine whether it was a deed, the question was distinctly presented, whether the disposition of the property, made by it, was valid in law, or void. And that involved two questions,—whether the instrument was delivered; and whether it was valid, the possession of the property being reserved to the donor for life. It was, thereupon, determined, that the disposition was legal, and hence that it was a valid deed, and not a will; so that the character and legal effect of the instrument were distinctly presented.

The distinction as to the necessity for delivery, is clearly laid down in the elementary works. "A gift," says Chitty, "is not good and binding, unless it be by deed; or unless the thing, which forms the subject of the gift, be actually delivered to the donee." Chitty Contr. 52. The same rule is laid down in Williams on Personal Property, 33. It is also held by adjudications in England, as a rule of the common law: *Irons* v. *Smallpiece*, 2 Barn. & Ald. (4 Eng. C. L. Rep.) 552; *Ward* v. *Audland*, 16 M. & W. 871; and is fully sanctioned by adjudicated cases in this country : *Banks* v. *Marberry*, 3 Littell, 276; *Bohn* v. *Headley*, 7 Harr. & John. 257; *Caines* v. *Marley*, 2 Yerger, 582; *Duncan* v. *Self's administrator*, 1 Marp. (N. C.) 466. And no adjudicated case has been produced, holding that a gift by deed, duly executed and delivered, without delivery of possession of the chattel conveyed, was not valid, by the rules of the common law, except it be *Marshall* v. *Fulgham*.

These authorities appear to be conclusive of the question, as a rule of the common law.

But the validity of such a gift is clearly recognized by our Statute of Frauds. Hutch. Code, 638, § 2. It enacts, that any conveyance of chattels, not upon valuable consideration, shall be taken to be fraudulent, as to creditors and subsequent purchasers, *unless the same be by deed*, acknowledged and recorded, or unless the possession of the chattel should remain with the donee. This

statute, it is true, has especial reference to creditors and subsequent purchasers; but it distinctly recognizes the validity of a gift of chattels, *as to such persons,* provided it be made *bona fide,* and duly acknowledged and recorded. And would it not be absurd to hold such a deed valid, as to the rights of creditors and subsequent purchasers, but yet void as to the parties themselves? It would be impossible to hold that such a deed was valid, as to third persons, as it is clearly declared by the statute to be, and yet inoperative, as between the parties to it; for that would be contrary to all reason, as well as the rule plainly recognized by the statute, that the deed is binding between the parties to it, though void as to creditors and subsequent purchasers; and though, in order to make it effectual, as to such persons, it must be recorded, yet, as between the parties, no registration is necessary, provided it be a deed duly executed and delivered.

The Statute of Frauds has indicated, in how far conveyances of the character in question were deemed impolitic and not to be countenanced. But, as between the donor and donee, irrespective of the claims of creditors and subsequent purchasers, no reason of sound policy appears to require that a donor shall not have the power, by deed duly executed and delivered, and especially if recorded, to convey his chattel by way of gift, to a person standing in such a relation of blood or kindred to him, as to constitute a good consideration, to take effect in possession at a specified time. Such settlements appear to be just and convenient as a mode of disposition of property, enabling the donor to dispose of his property deliberately, while in the enjoyment of his faculties, carefully fixing the terms upon which it should vest in possession in the donee, saving the trouble and expense of administration and distribution, and making an open declaration of the act; and, at the same time, assuring and making known to the object of his bounty, the portion of the donor's property which he was to receive, without the power of revocation. It is easy to perceive that, in such dispositions of property, nothing but justice would be done to those who should be the beneficiaries of the donor's property, by securing it to their use beyond the power of revocation, but to take effect in possession at the time which the donor had seen fit to appoint.

Nor does this rule disturb any rights which may have been

acquired by a conformity to the rule in *Marshall* v. *Fulgham.* That decision is but the negation of a power. No practice can have grown up under it in the country, and no instruments could have been made with reference to it, the operation of which would be affected by the view of the question here taken. But, on the contrary, the cases are numerous in the country where this rule has been acted upon, and where deeds of gift have been made in good faith, and duly delivered and recorded, and treated by the parties as valid, reserving possession of chattels to the donor for a specified time. In all such cases, the honest intentions, and, it may be, just dispositions of property, of the donor, would be defeated under the rule contended for, and with the most unjust consequences.

Under these views of the subject, I am of opinion that the deed in this case, if it had been duly executed and delivered, would have been valid, as between the donor and donee, to convey the slaves to the donee, to take effect in possession at the donor's death.

But the question is raised, whether the deed was *delivered* by the donor, so as to render it effectual in law.

The facts touching this point, as they are shown by the record, appear to be, that the deed was signed, sealed, and delivered by the donor, in the presence of a justice of the peace, more than two years before her death; it was not filed for record in the Probate Clerk's office until after her death; the husband of the donee, and a beneficiary of the deed, was the executor of the donor; and there is no proof of the delivery of the deed, except the certificate of the justice of the peace indorsed upon it, stating that the donor in his presence signed, sealed, and delivered it as her act and deed.

These facts are not sufficient proof of delivery. The certificate of the justice of the peace is rendered necessary by the statute, in order to admit a deed to record. But, in order to that, it is necessary that the deed should be *acknowledged* by the donor or grantor, or proved by the subscribing witnesses, before a justice of the peace, who must certify that it has been *acknowledged* or proved. Hutch. Code, 606, § 7; 607, § 12. Unless the certificate of the officer state that it has been *acknowledged*, or proved, it is not in conformity to the statute, and the deed is not admissible to record. The statute contemplates that the signing, sealing, and delivery

have already taken place, and that the donor or grantor *afterwards* appears before the officer, and *acknowledges* the validity of the act. In this case, the certificate of the justice of the peace does not state *an acknowledgment* of the execution and delivery of the deed, but simply states that the donor signed, sealed, and delivered it as her act and deed,—that the *fact was done* in his presence. It is, therefore, a mere certificate of *a witness to the execution* of the instrument; and that is neither a compliance with the statute in order to admit it to record, nor is it competent evidence of the fact of execution, and, of course, there is no sufficient evidence in the record, that the deed was signed, sealed, and delivered. It cannot be presumed, from the evidence in the record, that this was done; and the circumstances of the case appear to justify the contrary conclusion.

The deed is highly beneficial to the donees, and if really delivered and intended to be acknowledged, it must have been done for the purpose of having it recorded. Yet, as it appears by the record, it remained for more than two years without record, during all which time the property was subject to be sold to any purchaser, or to be charged with debts, and the gift defeated; and it was not recorded until after the donor's death.

It is, however, insisted that the point of delivery of the deed was not raised in the court below. That cannot be determined by the record. The appellant claimed title under the deed as an instrument duly executed and delivered, and it was incumbent on him to establish it as such. It does not appear from the record upon what ground the judgment below was founded; whether from insufficiency of the deed for want of delivery, or from the reservation of possession of the property, to the donor for life; nor does it appear that all the evidence before the court is presented in the record. But it would appear, from the proof offered by the appellees in relation to the time of the donor's death, that the question of due execution and delivery was intended to be raised. But we cannot say from the record, that it was not made and decided; and, as it is now presented for decision upon the record, it is our duty to say whether the evidence is sufficient to establish the delivery of the deed.

For these reasons, I think that the judgment should be affirmed. A re-argument was asked for and refused.

This case was decided after Judge Fisher had resigned, and before Judge Harris took his seat on the bench.