[ Filed November, 4, 1889. ]

## *In re* HOLLADAY'S ESTATE.

EXECUTOR—DUTIES OF HIS OFFICE—REDEMPTION OF PROPERTY OF THE ESTATE.—An executor is not bound by the duties of his office to pay bankers, brokers and other persons a bonus above legal interest to secure a loan of money to redeem property belonging to the estate of his testator which has been sold under the decree of a court having jurisdiction to order the same, nor is he bound to pledge his own securities or use his own credit to secure such loan.

EXECUTOR—DUTY OF—TO FILE AN INVENTORY.—Section 1112, Hill's Code, makes it the duty of an executor, or administrator, within one month from the date of his appointment, or such further time as the court or judge may allow, to file with the clerk an inventory, verified by his own oath, of all the real and personal property of the deceased which shall come to his possession or knowledge; and section 1114 makes it his duty, before the inventory is filed, to cause the property to be appraised at its true cash value by three disinterested persons; and for a failure to discharge these duties he is liable to removal.

COUNTY COURTS—JURISDICTION—REMOVAL.—In the nature of things, county courts are vested with a very large discretionary power over the conduct of executors and administrators, and its exercise will not be interfered with on appeal unless plainly required by some principle of law.

EXECUTOR OR ADMINISTRATOR—DUTIES ACTIVE AND NOT PASSIVE.—The duties of an executor or administrator are active and not passive. He cannot be permitted to neglect to do those things which are plainly required at his hands by law or the order of the court, and when complaint is made of such neglect, excuse himself by alleging that such delay or omission was for the benefit of the estate.

PER THAYER, C. J., DISSENTING.—Filed November 7, 1889.

Where a county court determines on the removal of an executor or administrator of an estate, upon the application of an heir, legatee, devisee, or creditor thereof, and the petition contains several grounds upon which the removal is sought to be procured, the court should indicate the particular ones it sustains.

A county court has jurisdiction in probate matters, but the mode of its procedure is specifically pointed out in the statute, and it has no discretion other than to strictly observe its provisions.

A county court has no authority to remove an executor or administrator except upon some one of the grounds laid down in the Civil Code, and, if it is upon the ground that the executor or administrator "has been unfaithful to or neglected his trust," it must appear expressly or by necessary inference that the applicant has sustained a probable loss in consequence thereof.

APPEAL from the circuit court for Multnomah county.

*R. & E. B. Williams*, for Appellant.

*Williams & Wood* and *Mitchell & Tanner*, for Respondent.

STRAHAN, J.—The late Ben Holladay, by his last will, named his brother Joseph Holladay as executor. His right to act as such was contested, and finally sustained in this court. *Holladay* v. *Holladay*, 16 Or. 147.

Thereafter Esther Holladay instituted this proceeding in the county court of Multnomah county to secure the removal of Joseph Holladay as such executor. The petition for the removal is very lengthy, and charges in detail: (1) Neglect in the management of the estate of Ben Holladay; (2) failure and neglect to file an inventory of the property of said estate within the time required by law; (3) incompatibility of Holladay's relations to the estate with his duties as executor of the will; (4) incapacity to perform the duties of executor, caused by age and mental infirmity. Joseph Holladay filed an answer denying the allegations of the petition. Upon the issues being completed, a large amount of evidence was taken, which accompanies the transcript. Upon the hearing in the county court, the prayer of the petition was granted, and a decree entered removing Joseph Holladay from his trust as executor, which was affirmed on appeal to the circuit court, from which last-named decree this appeal is taken. Upon the removal of Joseph Holladay, as such executor, James Steel was duly appointed administrator with the will annexed of the estate of Ben Holladay, deceased.

1. The first question demanding attention is the alleged neglect of Joseph Holladay in failing to redeem certain property belonging to said estate which had been sold under a decree of the circuit court of the United States for the district of Oregon. This property consisted of 10,000 shares of the capital stock of the Oregon Real Estate Company, and was sold for $333,000. This sale occurred on the thirty-first day of May, 1888, and the court by its decree approving said sale allowed time for redemption until the first day of February, 1889. Much evidence was taken by both parties on the question of Joseph Holladay's ability to borrow money sufficient to make the redemption of said property; the various bonuses that were demanded of him

by the bankers and brokers; the nature of the security he was required to give, etc. Mr. D. P. Thompson, in a letter dated October 18, 1889, was willing to undertake to raise the necessary amount for a bonus of $20,000. Mr. Wilcox demanded a bonus of $50,000. Other persons, with whom Mr. Holladay tried to negotiate a loan, demanded as much. Each of these parties required as security a transfer of the stock to be redeemed, and, in addition thereto, an assignment of Mr. Holladay's decree of foreclosure against Ben Holladay in his life-time, for more than $340,000. The evidence taken tends to prove that Mr. Holladay was disposed to submit to the most extravagant terms demanded, and that the negotiations failed in the end through no fault of his. It is unnecessary to discuss these various negotiations in detail. It is a sufficient answer to all the charges to say that it does not appear that the estate of Ben Holladay had any available funds to make the redemption, and Joseph Holladay was not bound, by the duties of his office, to put up his individual credit or securities to secure the money, even at a lawful rate of interest. Nor was he required by the duties of his office to pay the unlawful interest that was demanded by these bankers and brokers in the shape of bonuses. If Mr. Holladay had negotiated a loan on such terms, it might have resulted in a large pecuniary loss to himself; but it is unnecessary to decide this question now, further than to say he was not guilty of neglect, nor did he violate his duty as executor in failing to do so.

2. The next charge is more important: Section 1112, Hill's Code, requires an executor or administrator, within a month from the date of his appointment, or, if necessary, such further time as the court or judge thereof may allow, to make and file with the clerk an inventory, verified by his own oath, of all the real and personal property of the deceased which shall come to his possession or knowledge. Section 1113 prescribes what the inventory shall contain, and section 1114 requires: "Before the inventory is filed the property therein specified shall be appraised at its true

cash value by three disinterested and competent persons, who shall be appointed by the county court or judge thereof." Joseph Holladay was appointed and qualified as the sole executor of Ben Holladay's will, on the eleventh day of April, 1888. He had one month from this date in which to make and file an inventory, and upon a suitable showing the court was empowered to enlarge the time. It does not appear affirmatively that any such showing was made or the time enlarged. At some time prior to the twenty-second day of September, 1888, Joseph Holladay filed an inventory, or list, of the property of said estate, without first having caused the same to be appraised. He did not file this document within one month after his appointment, the time for filing was not enlarged, and he neglected to have the property appraised. On the argument it was suggested that, when the appraisers were appointed and notified him of their readiness to meet him and appraise the property, he was sick, and unable to attend to the business on that day. Had these facts been made to appear to the county court, they, no doubt, would have furnished a sufficient reason for enlarging the time for filing the inventory. But the executor seems to have acted on the assumption that his duties in this regard were not imperative as to time, and that, if he delivered a list of the property to the county clerk without appraisal, he had done all that he was required to do. A failure to make and return an inventory of the estate by the executor or administrator, within the time allowed by law, is a violation of his duty for which he is subject to removal. *Oglesby* v. *Howard*, 43 Ala. 144; *Estate of Brophy*, 12 Phila. 18; *Williams* v. *Tobias*, 37 Ind. 345; *McFadden* v. *Ross*, 93 Ind. 134.

3. But if the case on the record were doubtful, we would not feel called on to interfere. In the very nature of things, county courts are vested with large discretionary powers over the conduct of executors and administrators. It is not an absolute or arbitrary power, but is subject to the supervisory control of the circuit court. At the same

time, its exercise should not be interfered with unless some principle of law requires such interference.    The principle which I think should be applied in such case is thus stated in *Whitehall* v. *State*, 19 Ind. 30:   ''When we consider the supervisory power of the probate court, which our common pleas is,  over  executors,  administrators  and  guardians, and the duty resting upon that court to vigilantly exercise it, taken in connection with the amount of personal knowledge in the premises, which the court will generally, as a matter of course, possess, it will at once be conceded that, in a doubtful case, this court should not interfere with the action of the court below.''

4.    Under our probate system the duties of an executor or administrator are active, and not passive.    He cannot be permitted to neglect to do those things which are plainly required at his hands by law or the order of the court, and, when complaint is made of such neglect, excuse himself by alleging that such delay or omission was for the benefit of the estate.    No doubt, in this particular case, the property of the estate did appreciate in value; but that circumstance was accidental.    It might have gone the other way, and, if the excuse is good in one instance it ought to be in the other.    Such a theory is at variance with the requirements of our statute regulating probate procedure, and could not receive the sanction of this court.

5.    It was claimed that Joseph Holladay sustained such unfriendly relations towards Mrs. Holladay and her children that he ought to be removed for that cause. Some authorities hold that such a state of affairs may constitute ground for removal, but I do not deem it necessary to pass on the question at this time, for the reason the allegation is not sustained by the evidence.    Mr. Holladay denies any such charge, and the evidence offered to sustain it is weak and unsatisfactory.    It is very difficult for this court to believe that the surviving brother, in whose hands a most important trust was placed by his deceased brother, could harbor any feelings of resentment or unfriendliness towards that brother's widow and her

orphan children.   For the reasons above given, the decree of the court below must be affirmed.

[ Filed November 7, 1889. ]

THAYER, C. J., dissenting.—I agree with the view expressed in the opinion herein, prepared by Judge STRAHAN, that an executor is not required by the duties of his office to pay a commission above legal interest to secure a loan of money with which to redeem property which has been sold under a decree of court, and that he is not bound to pledge or incumber his own property or effects in order to secure a loan for such purpose.   I agree, also, with the view that it is the duty of an executor or administrator to file an inventory of the estate, as provided in section 1112 of the Code of Civil Procedure, and that a neglect on the part of such executor or administrator to comply with such duty subjects him to removal.   But I do not agree that such a neglect upon the part of the appellant in that particular is shown in this case as would authorize his removal. The appellant was selected by the testator to administer upon the latter's estate, and I do not think the county court had any legal discretion to remove him without a substantial cause.   Said court should show, it seems to me, some good reason for exercising so important a prerogative before it can be sanctioned by this court.   The removal of an executor should, upon general principles, require a stronger case than the removal of an administrator.   The latter is appointed by the court, while the former is named in the will of the testator as the particular person above all others whom he desires to have settle up his affairs; and his removal *pro tanto* revokes the will.   A probate court is not justified in thwarting the intention of a testator in such a case, unless there is a legal necessity therefor; and where the court has taken so decided a step, its records should show that such necessity existed.   The rights of creditors, heirs, or legatees must be shown to have been imperiled by the continuance of the executor in the office in order to justify the action of the court in removing him.   If the decision of the county court in this

case, removing the appellant as such executor, had been based upon the ground that he had failed and refused to file the inventory, there would have been less objections to it, but there is nothing in the case showing upon what particular grounds it was based. The court found that the appellant, as such executor, had "been unfaithful to and neglectful of his trust, to the probable loss of the petitioners," as alleged or charged in their petition. In what particular, however, he had been unfaithful or negligent, does not appear. There are several charges of unfaithfulness and neglect in the discharge of his duty set out in the petition, some of which are disproved by the evidence, and others are frivolous upon their face, but which of them the court sustained can only be conjectured.

We may regard the charge in the petition of neglect on the part of the appellant to file the inventory as the most serious one against him which is contained therein; but we do not know how the court found upon that charge. Its finding and decision may have been upon some other charge therein which this court would deem entirely insufficient. Where a charge of dereliction of official duty is made, which specifies several distinct grounds, the court which tries it, if it does not find all the specifications true, should state which ones of them it sustained. Some of the specifications contained in the petition, if admitted to be true, would not support the decision of the county court; notably, the one in which the appellant is charged with having neglected to borrow a sufficient sum of money upon his individual credit and that of the estate, by pledging his property and the property of the estate as security for its repayment with which to redeem the shares of stock sold under the decree of the United States court. Besides, it is not claimed from the evidence that he could have been able to borrow any money without pledging his own effects and paying a bonus, at one time of $25,000, and at another of $50,000. To have paid any such bonus out of the estate of the testator to procure a loan of money would have been a breach of the appellant's official duty; and yet, so

far as the court can know, it may have been upon that identical charge that the county court made its finding that he had "been unfaithful to and neglectful of his trust, to the probable loss of the petitioners." It is not, in my opinion, exacting too much of a court that tries a party upon a charge of violating an official trust he has sworn to faithfully perform, to require it, before pronouncing the party guilty of the charge, and declaring his office forfeited in consequence thereof, to set forth the facts found, and conclusions of law drawn therefrom. The judgment in such a case is an impeachment of the party's integrity; and it would be highly unjust to him, especially where the charge was made up of several distinct specifications, some of which could not be sustained under any proof, others accusing him of slight omissions, and others of corrupt designs, to adjudge him guilty generally, without distinction. Again, such a course is unfair to an appellate court, required to exercise revisory jurisdiction over such adjudications.

And I must also dissent from the view of my learned associate, that the county courts are invested with very large discretionary powers over the conduct of executors and administrators, and its exercise will not be interfered with on appeal, unless plainly required by some principle of law. County courts are vested with probate jurisdiction; but the mode of exercising it is specifically pointed out by statute, the provisions of which must control their action. Section 1094 of the Civil Code provides that any heir, etc., may apply for the removal of an executor or administrator who has become of unsound mind, or been convicted of a misdemeanor involving moral turpitude, or who has in any way been unfaithful to or neglected his trust, to the probable loss of the applicant. Such application shall be by petition, and upon notice to the executor or administrator, and, if the court find the charge to be true, it shall make an order removing such executor or administrator, and revoke his letters. The county court has no discretion in the matter. The charge is made by

a party interested in the estate, and it must consist of one of the three things enumerated in the section. The executor or administrator must either have become of unsound mind, been convicted of a misdemeanor involving moral turpitude, or been unfaithful to or neglected his trust, to the probable loss of the applicant, or have become a non-resident of the State, as provided in section 1095, Code of Civil Procedure, before the court can exercise the power of removal. What acts or omissions on the part of the executor or administrator constitute such unfaithfulness or neglect of the trust are not specified in the statute, further than that they must be such as will be liable to result to the probable loss to the heir, legatee, devisee, creditor, or other person interested in the estate, who applies for removal.

I have examined the evidence in support of the several charges made against the conduct of the appellant as executor of the estate of his brother Ben Holladay, and am not satisfied that it is sufficient to establish the ground of removal above referred to, which is the only one prescribed in the statute that is applicable to the case. It is probably true that the appellant was somewhat dilatory in filing the inventory of the estate. He had not, however, been wholly passive in the affair. He had prepared an inventory, and submitted it to the appraisers, but they had not appraised it, nor could he compel them to do so. Perhaps he should have had other appraisers appointed to perform that duty; though the condition the estate was in at the time—it being all in the hands of receivers appointed by the circuit court —was at least some excuse for the delay. Conceding, however, that the appellant was neglectful in that particular, how can the respondents claim to have been injured by it? It is not pretended that the property has depreciated in value. On the contrary, it is admitted that its value has enhanced far in excess of the amount of interest accrued on the debts. It is not shown, and does not appear, that one cent's worth of the estate has been lost or wasted on account of any official neglect of the applicant. The

respondents may have been anxious to have the estate set-
tled, but that is no ground for removing the appellant from
his executorship.   The business could have been expedited
without resorting to any such extreme measure.   The
county court has power to control and direct the conduct
of such officials.   I am apprehensive that, if executors and
administrators were allowed to be removed for slight
cause, it might often encourage a class of persons to
undertake to procure their removal in order to enable
themselves to carry out some selfish purpose.   The desire
to rob the estate of a dead man seems to be very prevalent.
and it can be accomplished more effectually when the
executor or administrator is of a pliant, yielding disposi-
tion, than where he is obstinate and persistent.   Experience
has proved that the more popular and agreeable members
of community do not always make as faithful officials as
those who are less affable, and more inclined to be rude in
their intercourse with mankind.    "Ugly honest persons,"
as they are styled, are very apt to be unswerving in their
adherence to the dictates of duty, and exact in its perform-
ance; and it would be humiliating and unjust if such
persons were to be removed from the administration of an
estate because they were obnoxious to those who were
devising schemes to make profit out of it.   I fear that if
this decision is affirmed it will establish a bad precedent,
and open a door to fraud and dishonesty.   I am opposed
to its affirmance, under any circumstances, until I know
the particular grounds upon which it was rendered.   I am
in favor at least of sending the case back, with directions
to the county court to state explicitly its findings of fact
and conclusions of law upon which its decision was based.
I am aware that the statute does not require county courts
to pursue such a course in probate matters, but I believe,
nevertheless, that the practice of doing so, in a case like
the one under consideration, would be a wholesome practice
to adopt.

Application for rehearing denied, December 16, 1889