## Estate of LOUIS GRABER, Deceased.

[No. 14,399; decided February 15, 1895.]

Inventory—Time for Filing.—The statute prescribing the time within which the inventory and appraisement of an estate of a decedent must be filed is directory merely.

Inventory—Revocation of Letters for Failure to File.—The statutory authority of a court to revoke letters testamentary or of administration, in case the executor or administrator fails to return an inventory within a prescribed time, is discretionary.

Inventory—Time for Filing.—An executor should file an inventory at the earliest moment possible, and if other property subsequently comes to his knowledge, he should file supplemental inventories from time to time; it is, however, the application of the law to a particular state of facts that makes a case, and each case must find its justification or exculpation in these peculiar facts.

Executor.—The Removal of an Executor Requires a Stronger Case than removal of an administrator.

Executor—Removal for Failure to File Inventory.—A court will not remove executors for failure to file an inventory within the precise time prescribed by statute, when their dereliction arises because of the negligence of their counsel.

Ben B. Haskell, for petitioner.

Andros & Frank, for executors.

COFFEY, J. This is a petition for the removal of executors under the provisions of sections 1436, 1437, 1443 and 1450 of the Code of Civil Procedure. The first application is made by Louis Graber, Jr., who alleges that he "is an heir at law of the said Louis Graber, deceased, and a testamentary heir and legatee under the will of said decedent." The ground of his application is that the executors have failed to file an inventory within the time appointed by sections 1443, and 1450, and he insists that, such fact appearing, the court has no discretion in the matter, but must grant his prayer. The supreme court has held in Phelan v. Smith, 100 Cal. 169, 34 Pac. 667, that the clause in the code under which the executor or administrator is required to file an inventory and appraisement within three months after his appointment is directory. But the counsel for the applicant insist that Phelan

v. Smith is entirely foreign to the consideration of the subject matter here in dispute, for that was a collateral attack, upon an exception to the introduction in evidence of a probate record, upon the ground, inter alia, that the inventory had not been filed within three months. The court held that the failure to file the inventory within three months did not vitiate the proceeding. The rule of statutory construction for which applicant contends requires the concurrence of three premises, none of which exists, he claims, in the case of Phelan v. Smith:

1. A grant of power to a public officer to do a certain act involving the interests of the public or of a third person;

2. The existence of the conditions which authorize the exercise of the power granted;

3. The application by the interested party for the exercise of the power granted.

It is a matter of no concern to counsel whether the statute requiring the executor to file an inventory is, as to such executor, permissive, directory or mandatory, but he feels confident that under the circumstances of this case the statute authorizing his removal is mandatory.

Examining the sections in the light of the canons of construction propounded by counsel for executors, according to the context and evident intent of the legislature, the applicant argues as follows:

The legislature first provides that an inventory must be filed within three months. (Section 1443.) It then provides that if the executor fails to do this within the time prescribed, or such further time as the court may allow, not exceeding two months, he may be removed. (Section 1450.) To hold that the court need not discharge the executor, when applied to, is to entirely negative the limitation upon the powers of the court to extend the time for filing the inventory. If this court should now refuse to discharge these executors and should permit them to file an inventory, it will be an extension of time exceeding two months, and a consequent nullification and total disregard of the statutory limitation. If the legislature intended to grant the court discretion to extend the time indefinitely, why was the limitation inserted at all? Why not simply say "such further time as the court

may allow''? Under the construction of the executors the very important words of limitation, "not exceeding two months," are treated as surplusage. For assuredly, if the executors are retained in the face of the application for their discharge, then as executors they must in the future file an inventory; and by their retention the court sanctions and permits their filing an inventory after the expiration of five months, which is precisely the same thing as extending the time.

In this case there is a grant of power to the court to discharge the executors for their failure to file an inventory. As was said by the supreme court of the United States in Supervisors v. United States, 4 Wall. 446, 18 L. Ed. 423, this power is not granted for the benefit of the court, but for the benefit of parties interested. "It is placed with the depositary to meet the demands of right, and to prevent a failure of justice." This grant of power is obviously for the benefit of the heirs and creditors, who have a right to demand that the estate shall be administered in an orderly manner as provided by law, and that every safeguard provided by law for the preservation of the estate shall be employed and maintained.

The argument of counsel for applicant is very able, and it is due to his earnestness in presenting his points and the necessary labor involved in their due examination that the court has devoted so much time (when not otherwise occupied with the urgent demands of daily attendance in court) to their study with sympathetic interest, fully aware how far-reaching the decision may be in the administration of estates. The portions of the sections of the Code of Civil Procedure which petitioner invokes as bearing upon this application are as follows:

"Section 1436. Whenever a judge of a superior court has reason to believe, from his own knowledge or from credible information, that any executor . . . . has wrongfully neglected the estate, or has long neglected to perform any act as such executor, he must, by an order entered upon the minutes of the court, suspend the powers of such executor until the matter is investigated.

"Section 1437. When such suspension is made notice thereof must be given to the executor, and he must be cited to appear and show cause why his letters should not be revoked. If he fail to appear in obedience to the citation, or, if appearing, the court is satisfied that there exists cause for his removal, his letters must be revoked, and letters of administration granted anew, as the case may require."

"Section 1443. Every executor must make and return to the court, within three months after his appointment, a true inventory and appraisement of all the estate of the decedent, including the homestead, if any, which has come to his possession or knowledge."

"Section 1450. If an executor neglects or refuses to return the inventory within the time prescribed or within such further time, not exceeding two months, which the court or judge shall for reasonable cause allow, the court may upon notice revoke the letters testamentary, and the executor is liable on his bond for any injury to the estate, or any person interested therein, arising from such failure."

In the case of McWillie v. Van Vacter it was held that the purpose of requiring an inventory and appraisement is to secure regularity and method in the management of the decedent's estates, to secure fidelity on the part of those intrusted with their administration, and to guard the rights of all parties by furnishing means of accurate information as to the value of any estate in the course of administration: McWillie v. Van Vacter, 35 Miss. 428, 72 Am. Dec. 129.

One of the purposes of an inventory is to make of record a reliable schedule of the property claimed by the executor for the estate. The purposes of this record are manifold, and among others: 1. To charge the executor to safely keep and account for all such property as he by his inventory admits comes to his possession as such executor: Code Civ. Proc., sec. 1613. And 2. If, intentionally or through ignorance, the executor fail to include in his inventory property belonging to the estate, the omission may at once be called to the attention of the executor, and rectified at the instance of the persons interested.

The wisdom of requiring an inventory at an early period is plain. Until it is filed no one can know whether the executor

claims for the estate property which is well known to be a part of it. To illustrate: Rents of land belonging to the estate might be wasted and lost because the executor, not knowing the lands belonging to the estate, fails to demand them; and the heirs, believing the executor to be regularly collecting the rents, do not inform him of his error.

Were no inventory required it might frequently happen that dishonest executors would make no account of property belonging to the estate, and on account of lapse of time, death of witnesses and destruction of evidence, it would be impossible to establish the title of the estate to the property. As in the case at bar, argues the applicant, the executor receives in possession money left by the decedent; at present there are witnesses and evidence to establish his receipt of this money as such executor; but if he neglect filing his inventory until these witnesses die, he may then with impunity deny that he had ever received any money belonging to the estate. The statute says that in all cases this inventory must be filed within five months, and deprives the court of power to extend this time. (Section 1450.) If the executor had a right to neglect his statutory duty to file an inventory for one day after the expiration of the five months, he may neglect it for two days, a week, a month, a year, a decade—he may neglect it indefinitely. He need file no inventory at all; and (if he be a young man) he can wait until all of the heirs and creditors are dead, and all recollection of the existence of his testator is buried in the oblivion of dusty archives, and then make away with the estate.

It seems obvious that a speedy listing of the assets of the estate will tend to insure honesty in the administration, and to guard against errors and omissions. All the statute requires is the listing of such properties as have come to the knowledge or possession of the executor. It requires that when an executor takes possession of the property of a dead man as trustee for the heirs and creditors, that he shall file for record a written acknowledgment of the fact. No honest man can do less; no conscientious man would shirk the performance of so simple and (independent of the statute) plain a duty. If an executor violate his oath by refusing to return an inventory, there is no escape from the conclusion that his

motives are base and dishonorable, and that therefore he should be removed. If an executor neglect to perform his duty, it is not so clear by what motive he is actuated, but it is plain that he is shiftless and unfit to be intrusted with the property interests of others, and therefore he should be removed. The executor is trustee for the creditors and heirs, and, if he intends conscientiously to discharge his trust as an honest and competent business man, he can have no valid reason for neglecting to do that which in equity and by the plain provisions of the statute he is required to do.

In conformity with the spirit of the statute, an executor should file an inventory at the earliest moment possible; and if other property subsequently comes to his notice, he should file supplemental inventories from time to time. The time within which this must be done has been determined by the legislature. The language in section 1450—"such further time, not exceeding two months, which the court or judge shall for reasonable cause allow"—is obviously intended to definitely fix the time within which the inventory must in all cases be returned, and as a limitation upon the power of the court to extend the time.

In this case, it is insisted by counsel for applicant, the executors plainly come within the provision of sections 1436, 1437, Code of Civil Procedure, in having "long neglected to perform any act as such executors"; and it is submitted that the court having made and entered an order suspending the powers of the executors, and they being cited to show cause, and the verity of the petition not being impugned, the court "must" revoke their letters under section 1437.

Independent of sections 1436, 1437, however, it is claimed that the provisions of sections 1443 and 1450 make their removal imperative. The use of the word "may" in section 1450 is not permissive, but mandatory. Sedgwick, in his work on Statutory Construction, says: "This subject has been recently much considered in England on the true construction of the act called the County Courts Extension Act, which declares that in certain cases a judge at chambers may, by rule or order, direct that the plaintiff shall recover his costs. The word 'may' was here held not to be discretionary, but to mean 'shall'; and the court said that when a statute con-

fers an authority to do a judicial act in a certain case it is imperative on those so authorized to exercise the authority when the case arises, and its exercise is duly applied for by a party interested and having the right to make the application; that the word 'may' is not used to give a discretion, but to confer a power upon the court and judges, and the exercise of such power depends not upon the discretion of the court or judge, but upon the proof of the particular case out of which such power arises": Sedgwick on Statutory Construction, 376.

In a well-considered case in New York the rule was laid down as follows: "Where a public body or officer has been clothed by the statute with power to do an act which concerns the public interest or the rights of third persons, the execution of the power may be insisted on as a duty, though the phraseology of the statute be permissive merely and not peremptory": Mayor etc. of New York v. Furze, 3 Hill, 612.

This rule is cited and approved in People v. Otsego Co., in which it is held that the words "authorized and empowered," in a statute conferring power on boards of supervisors to provide for refunding taxes improperly paid, are mandatory: People v. Otsego Co., 51 N. Y. 406.

In the Estate of Ballentine it was held that the words "may set apart," in section 121 of the probate act, providing that the probate judge may set apart a homestead, are mandatory and leave no discretion with the judge, and that the word "may" is to be construed as "shall": Estate of Ballentine, 45 Cal. 699.

And in Hayes v. County of Los Angeles it is held that the word "may" in section 3804 of the Political Code, prior to 1889, providing that "any taxes, percentum and costs erroneously or illegally collected may, by order of the board of supervisors, be refunded by the county treasurer," is to be construed as "shall": Hayes v. Los Angeles, 99 Cal. 74, 33 Pac. 766.

Notwithstanding this array of authorities, I am inclined to think that the supreme court has in Phelan v. Smith indicated the rule to be applied in such a case as the one at bar, and this being the latest expression of that tribunal, it is entitled to the respect and obedience of this court.

I have given the argument of the learned counsel for applicant its full force, as far as the sentiments expressed are concerned; they meet my entire concurrence and are coincident with those to which I have given utterance for years, with iteration and reiteration tiresome to members of the bar and others compelled by circumstances to listen to the lectures of the court. Not a day passes, it may be said, without a repetition of these admonitions to administrators and executors and appraisers. But the conclusion of the counsel is one that I do not see my way clear to adopt under the latest construction of the supreme court. I am reminded that when this court, in the conviction that it was doing its duty, removed an administrator upon what seemed to it supersufficient premises, the appellate court gently admonished the probate judge that administrators have rights no less than courts have duties: In re Welch, 86 Cal. 183, 24 Pac. 943.

It would appear that the case of an executor is even stronger, for, as was said by Thayer, chief justice, in his dissenting opinion (Holladay's Estate, 18 Or. 168, 22 Pac. 752): "The removal of an executor should, upon general principles, require a stronger case than the removal of an administrator. The latter is appointed by the court, while the former is named in the will of the testator as the particular person above all others whom he desires to have to settle up his affairs, and his removal pro tanto revokes a will. A probate court is not justified in thwarting the intention of a testator in such a case, unless there is a legal necessity therefor." This idea seems applicable to the case at bar for reasons that may be gleaned from the record.

At all events, the question is, Shall these executors be removed from their trust for failure to file in due time an inventory and appraisement? If the statute be mandatory, there is no other judgment to pronounce; but if it be directory, as the supreme court has declared, the court should consider what exculpatory matter is presented. Many cases of this kind are on record; the court has too frequent occasion to comment thereon and to incur the ire of attorneys whose wrath is kindled by the censure of the court upon this item of negligence; but each case stands upon its own foot-

ing. It is the application of the law to a particular state of facts that makes a case; and each case must find its justification or exculpation in its peculiar facts. And in this case the court is called upon to punish the executors for an act which was the result of the confessed neglect of their counsel, involving no criminal intent or design on the executors' part. But, it is said, they cannot shield them-selves behind their counsel. This is true, as a general proposition; but laymen who are usually selected as executors are allowed counsel to advise them and to discharge duties and to attend to details manifestly not within the common capacity of unprofessional men (Code Civ. Proc., sec. 1616), and why, then, since the discretion of the court is to be exercised, should we hang the layman for the laches of the lawyer? For it is a hanging matter, since the honest executor may for such an omission be deprived of his official life in an ignominious manner, his name stigmatized, his credit impaired or destroyed, his reputation ruined, because through some lapse of his attorney he has not, within the precise period, obeyed the direction of the statute. Why not suspend or disbar the lawyer, for it is primarily his offense? Harsh as such a suggestion may seem, it would be no greater hardship in some cases than the removal of an executor for dereliction of which only by a violent presumption of the law he may be held intelligently guilty.

I am of opinion that in the circumstances of this case the court would not be warranted in exercising its discretion by granting the application to remove the executors and revoke their letters testamentary.

Application denied.

---

An Executor or Administrator Who Neglects or Refuses to Return an Inventory within the time prescribed therefor is liable to have his letters revoked, and he becomes answerable on his bond for any injury to the estate occasioned by his dereliction of duty. The provision of the statutes on this point, however, is directory merely, and leaves the question of revocation within the discretion of the court; Phelan v. Smith, 100 Cal. 158, 34 Pac. 667; Estate of Graber, 111 Cal. 432, 44 Pac. 165; Deck's Estate v. Gherke, 6 Cal. 666; Estate of Holladay, 18 Or. 168, 22 Pac. 750; Clancy v. McElroy, 30 Wash. 567, 70 Pac. 1095.