In the Matter of the ESTATE OF Flora O. GONZALES

In the Matter of the Estate of John H. Gonzales

Ruby Degner and Steve Gonzales, Personal Representatives of the Estates of Flora O. Gonzales and John H. Gonzales, Appellants (Plaintiffs),

v.

Mary Lou Yaunick and James M. Yaunick, Appellees (Defendants).

No. 97–268.

Supreme Court of Wyoming.

May 18, 1999.

Walter Urbigkit of Frontier Law Center, Cheyenne, WY, Representing Appellants.

G. Kevin Keller, Cheyenne, WY, Representing Appellees.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

LEHMAN, Chief Justice.

In a protracted dispute among siblings over their parents' estates, a sister moved for revocation of letters of administration issued to the personal representatives. The district court granted the motion, finding that the parties' hostility, evidenced by their litigiousness and antagonism, threatened to hamper

the administration of the estates. Because the district court did not abuse its discretion in revoking the letters of administration, we affirm.

## ISSUES

The appellants, Ruby Degner and Steve Gonzales, co-personal representatives of the estates of Flora O. Gonzales and John H. Gonzales, present one issue for our review, which they summarize as follows:

> In simplest context the issue on appeal is whether cause for revocation of letters of administration is created by the Personal Representatives' rejection of a creditor's claim following a continuing course of legal actions directed to achieve an equal division of the estates involved for all heirs in contest with a sister.

The appellees, Mary Lou Yaunick and James M. Yaunick, restate the issue as:

> Whether the district court acted within its discretion in revoking the Letters of Administration.

## FACTS

The decedents, John H. Gonzales (Mr. Gonzales) and Flora A. Gonzales (Mrs. Gonzales) were husband and wife. In January of 1980, they acquired the home that is the subject of this dispute. Although the couple resided together in the home, Mrs. Gonzales was the lone grantee of the deed transferring the property. In April of 1985, Mrs. Gonzales executed a power of attorney which appointed two of the nine Gonzales children, Mary Lou Golding (now Yaunick) and Ramona Allen, as her attorneys in fact. Utilizing this power of attorney, Mary Lou and Ramona executed a warranty deed conveying the home to themselves, reserving a life estate for Mr. Gonzales. The deed, which was also signed by Mr. Gonzales, was filed for record in May of 1985. Mrs. Gonzales departed this life, intestate, on October 24, 1985. Mr. Gonzales was subsequently placed in a nursing home, and the home was rented.

Litigation among the children began in June of 1994, when Ramona Allen and Mr.

* Chief Justice at time of expedited case conference;  retired November 2,1998.

Gonzales filed an action to quiet title and for an accounting of rents from Mary Lou Yaunick. When the other children failed to appear or defend the action, Ramona and Mary Lou agreed that each would receive a one-half interest in the home, to the exclusion of the other children. On April 11, 1995, a default judgment was entered quieting title in Ramona and Mary Lou, with reservation of a life estate for Mr. Gonzales. Mr. Gonzales died intestate September 6, 1995.

On November 9, 1995, five Gonzales children, including appellant Ruby Degner, brought an action to set aside the default judgment. On December 1, 1995, the default judgment was set aside because the five children had not been properly served with notice of the action. Next, an action was instituted to invalidate the deed issued under the power of attorney. By an August 14, 1996 order, the district court voided the deed, as that conveyance exceeded the scope of the power of attorney. No appeal has been taken from any of these rulings.

With the deed invalidated, the home will pass by intestacy. On October 29, 1996, Ruby Degner and her brother Steve Gonzales petitioned for letters of administration and were duly qualified. Acting as co-personal representatives of their parents' estates, they made demand on the Yaunicks to deliver possession of the home for administration. The personal representatives also requested an accounting of rents. Response by the Yaunicks came in the form of creditor claims against the estates of Mrs. Gonzales ($13,766.88) and Mr. Gonzales ($10,582.70) for support and property maintenance. The personal representatives rejected the Yaunicks' claims, prompting the Yaunicks to file suit based on the claims. Besides these claims, the personal representatives have also rejected a claim submitted by the State of Wyoming, which is seeking to recoup expenses for Mr. Gonzales' medical care. If all of these claims are allowed, claims and fees would surpass the value of the estates, the sole asset of which is the home valued at approximately $50,000.

On April 24, 1997, the Yaunicks moved to revoke the letters of administration issued to the personal representatives. In their motion, the Yaunicks alleged that, due to personal animosity and a conflict of interest, the personal representatives were wasting estate assets. As a replacement, the Yaunicks recommended a local attorney who was willing to act as personal representative. After hearing argument from counsel, the district court granted the Yaunicks' motion. In its order revoking the letters of administration, the district court wrote:

> The parties in these cases have shown actual hostility to each other. The litigiousness and antagonism between the parties has reached the point that it will hamper the expedient, efficient resolution of the probate estates, as well as the civil cases.

The ousted personal representatives timely appeal the district court's order.

## STANDARD OF REVIEW

In reviewing a district court's refusal to revoke letters of administration, this court applies its abuse of discretion standard of review:

> Whether the cause shown be good or bad is a matter largely within the discretion of the trial court; and, when that court has investigated the question and adjudicated upon it, it will only be where a gross abuse of discretion has occurred that this court will interfere.

*In re Haddenham's Estate*, 358 P.2d 706, 707 (Wyo.1961) (*quoting In re Graber's Estate*, 111 Cal. 432, 44 P. 165, 166 (1896)). *See also In re Mayne's Estate*, 345 P.2d 790, 795 (Wyo.1959).

In the recent case of *Vaughn v. State*, 962 P.2d 149 (Wyo.1998), we took occasion to revisit and refine our abuse of discretion standard of review. There, we settled on the following definition:

> Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.

*Id.* at 151 (*quoting Martin v. State*, 720 P.2d 894, 897 (Wyo.1986)). In this case, this standard requires that a reason stated by the trial court justify the manner in which it exercised its discretion. *Matter of Baird's*

*Estate,* 408 N.E.2d 1323, 1328 (Ind.App. 1980).

If the reason given by the court is not a valid basis for a particular exercise of discretion, it can be no more than conjecture on our part that once the court recognizes the invalidity of its original reason it will reach precisely the same exercise of discretion for other reasons.

*In re Marriage of Miles,* 173 Ind.App. 5, 362 N.E.2d 171, 174 (1977).

## DISCUSSION

In its order revoking the letters of administration, the district court indicated that the hostility, specifically litigiousness and antagonism, between the personal representatives and the Yaunicks had "reached the point that it will hamper the expedient, efficient resolution of the probate estates, as well as the civil cases." Revocation of letters of administration is governed by Wyo. Stat. Ann. § 2–3–125 (Michie 1997), which provides in pertinent part:

If by reason of any delays in such settlement and delivery of the estate *or for any other cause the circumstances of the estate or the rights of those interested therein require it, the court may, before settlement of accounts and delivering up of the estate is completed, revoke the letters of the personal representative,* and appoint another personal representative, either special or general, in the same manner as for original letters of administration.[1]

(Emphasis supplied.)

As a general matter, a personal representative should be removed where his personal interests conflict with his official duties. However, mere hostile feelings toward persons interested in the estate is not ground for removal unless it prevents proper management of the estate. *In re Hartt's Estate,* 75 Wyo. 305, 362, 295 P.2d 985, 1006 (Wyo. 1956). In addition,

[w]e must bear in mind that the aim of probate procedure is the speedy settlement and adjudication of rights in the property of a decedent to the end that those entitled to share may have the fullest benefit of the right which the law gives them at the earliest moment consonant with due process and orderly procedure.

*In re Haddenham's Estate,* 358 P.2d at 708.

The hostility of the Gonzales children is evident from their clearly established adversarial relationship. As a result of the warranty deed issued under the power of attorney, the children are divided into two warring factions. The first faction consists of Mary Lou Yaunick and Ramona Allen, who, relying on the deed, earlier maintained that each was entitled to a one-half interest in the Gonzales home. The second faction is comprised of the other children (including the personal representatives) who believe the home should be divided equally among the children. The litigation among the Gonzales children began with the quiet title action, which resulted in a default judgment that was later set aside. Next, the district court voided the warranty deed issued under the power of attorney. However, invalidation of the deed has not ended this dispute because the Yaunicks now claim an interest in the home by virtue of the father's signature on the warranty deed.

In addition, peripheral disputes among the children continue. Funeral expenses and rents from the home are both at issue. Although the record is unclear, it also appears the Yaunicks have refused to turn over the home for administration. Given this history, it is clear that the parties' conflicting positions have led, and will continue to lead, to litigation at every turn. This was confirmed by the personal representatives' attorney who, in refusing to refer the estates to alter-

---

1. 33 C.J.S. *Executors and Administrators* § 95(b) (1998) notes the distinction between revocation of letters of administration and removal of a personal representative:

While the distinction is not observed to any great extent, revocation is ordinarily proper when it is made to appear that the letters should not have been issued or were improperly issued, while removal is proper where facts

occurring since the appointment render it inadvisable to continue the representative in office.

Wyo. Stat. Ann. § 2–3–125 does not draw this distinction, as the grounds for revocation therein would more properly be considered grounds for removal. As such, we will use the terms revocation and removal interchangeably.

native dispute resolution, stated: "I'm opposed to mediation because it is going to add more complexity and not go anywhere." As the preceding establishes, the parties' hostility threatens to make the administration of the estates long and difficult.

The personal representatives contend that they were removed because they demanded that the Yaunicks turn over the home to the estate and then later rejected Yaunicks' creditor claims. They argue that these actions are not evidence of hostility, but are actions required by their roles as personal representatives. There are two problems with the personal representatives' contentions. First, they ignore the hostility created by the litigation that took place prior to issuance of the letters of administration. Second, even if the personal representatives were properly performing the duties of their post, the Yaunicks did not have to show that the personal representatives had been derelict to prevail. In fact, a removal of a personal administrator may be based upon "any other ground for believing that his continuance in office will be likely to render the * * * administration of the estate difficult, inefficient or unduly protracted. *Actual dereliction in duty need not be shown." Quincy Trust Co. v. Taylor*, 317 Mass. 195, 57 N.E.2d 573, 574 (1944) (emphasis supplied).

This case is reminiscent of an early Iowa case in which two groups of heirs battled over an uncle's estate. In affirming the trial court's refusal to appoint a husband of one of the heirs as personal representative, the Iowa Supreme Court wrote:

> It must have been obvious to the trial court, as it is to us, that the just, fair, and equitable administration of this estate will require a firm and impartial hand, acting under the immediate direction of the court, to conserve said estate and promote the best interests of all parties concerned.

*In re Tracy's Estate*, 214 Iowa 881, 243 N.W. 309, 310 (1932).

Although we affirm the district court's order, we do not mean to reward the Yaunicks for their role in the disagreements. Nor do we mean to give interested persons free reign to remove personal representatives.[2] We admit concern that neither party presented witnesses or exhibits in the hearing on the motion for revocation. However, we are satisfied that the prior litigation between the parties has created a hostile, adversarial atmosphere that threatens to interfere with the orderly administration of the estates. We hold that the district court did not abuse its discretion in revoking the letters.

Finally, we reject the personal representatives' contention that the motion to revoke the letters of administration was not made within a reasonable time, as required by *In re Johnson's Estate*, 379 P.2d 824, 825 (Wyo. 1963). This case is not like *Johnson*, where the petition for revocation came after the probate had been substantially completed. *Id.* In this case, the administration was just beginning. We, therefore, reject the personal representatives' contention.

## CONCLUSION

It is unfortunate that the Gonzales children cannot amicably settle their differences. Their hostility, evidenced by their history of litigation, threatens to hinder administration of their parents' estates. The district court did not abuse its discretion in revoking the letters of administration.

Affirmed.

---

2.  We are mindful of the warning put forth by a dissenting justice in an early Oregon case:

> I am apprehensive that, if executors and administrators were allowed to be removed for slight cause, it might often encourage a class of persons to undertake to procure their removal in order to enable themselves to carry out some selfish purpose. The desire to rob the estate of a dead man seems to be very prevalent.

*In re Holladay Estate*, 18 Or. 168, 22 P. 750, 753 (1889) (Thayer, C.J., dissenting).